**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| ROBERT EVAN SPIERER and | ) | |
| MARY CHARLENE SPIERER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:13-cv-00991-TWP-TAB |
| | ) | |
| COREY E. ROSSMAN, | ) | |
| JASON ISAAC ROSENBAUM, and | ) | |
| MICHAEL B. BETH, | ) | |
| | ) | |
| Defendants. | ) | |

## ENTRY ON MOTIONS TO DISMISS

In the early morning hours of June 3, 2011, Lauren Elizabeth Spierer ("Lauren") disappeared from the streets of downtown Bloomington Indiana. Her parents, Robert Evan Spierer and Mary Charlene Spierer ("the Spierers") brought this action alleging the negligent actions and omissions of the Defendants caused Lauren's disappearance, injury and death. The Defendants Corey E. Rossman ("Rossman"), Jason Isaac Rosenbaum ("Rosenbaum") and Michael B. Beth ("Beth") each filed Motions to Dismiss (Dkts. 20, 22 and 24). All three motions were the subject of a hearing and oral argument held on Monday, December 2, 2013. Following oral argument, the Court issued a ruling from the bench granting the Motion to Dismiss filed by Beth, and took the motions filed by Rossman and Rosenbaum under advisement (Dkt. 36). The Court, having considered the parties' arguments, now **GRANTS in part** and **DENIES in part** Rossman's and Rosenbaum's motions to dismiss.

# I.    <u>FACTUAL BACKGROUND</u>

The following facts are taken from the Spierers' Complaint (Dkt. 1-1) and must be accepted as true solely for purposes of these motions to dismiss.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.").  The Spierers are the parents of Lauren Elizabeth Spierer, who was enrolled in a four-year post-secondary educational program at Indiana University in Monroe County, Indiana in June, 2011, and was under the age of 23. Rossman is a resident of Massachusetts, Rosenbaum is a resident of Michigan, and Beth is a resident of New Jersey; however, all three Defendants lived in Monroe County in June 2011. According to the Spierers' Complaint, on or about the night of June 2 and in the early morning hours of June 3, 2011, Lauren attended a party at Rosenbaum's residence (hereinafter, the "Rosenbaum Party") as Rosenbaum's invited guest. Rosenbaum interacted with Lauren at the party and observed that she appeared intoxicated. Lauren consumed alcohol at the party supplied by Rosenbaum.  She left the Rosenbaum Party with Rossman and a mutual friend, and went to Rossman's residence located in the same complex.  Rossman shared the apartment with Beth, who was also at the Rosenbaum Party.  Beth returned to his apartment while Lauren and Rossman were there. Beth observed that Lauren was extremely intoxicated, and witnessed Rossman encourage Lauren to join him at Kilroy's Sports Bar ("Kilroy's"), located approximately three blocks from Rossman's residence.

Approximately one hour after attending the Rosenbaum Party, Rossman escorted Lauren from his residence to Kilroy's. As Lauren entered Kilroy's, a witness observed that Lauren appeared intoxicated, had trouble standing and she relied upon Rossman's assistance to walk. Over the course of approximately one hour, Rossman purchased, provided, and helped Lauren

consume multiple alcoholic beverages.  At approximately 2:30 a.m., Lauren was observed in an intoxicated state leaving Kilroy's with Rossman, without her shoes or cell phone. Rossman and Lauren then went to the fifth floor of Smallwood Plaza, the building where her apartment was located. Multiple individuals observed Lauren in a "distressed, incoherent and nonresponsive state" near the elevator on the fifth floor with Rossman. Rossman was confronted by these individuals for not assisting Lauren to her apartment, and he engaged in a physical altercation with one of the individuals. Instead of assisting Lauren to her apartment on the fifth floor of Smallwood Plaza, Rossman was observed shortly thereafter assisting her away from Smallwood Plaza and through an alley in the direction of his residence. Rossman was then observed less than a block from his residence carrying Lauren slung across his back due to her extremely impaired state.

At approximately 3:30 a.m., Beth, who had recently been a victim of a crime at his apartment, returned home from the Rosenbaum Party and became alarmed when he witnessed what he believed might be burglars in his residence. Beth discovered that it was Rossman and Lauren who had entered the residence shortly before him. Beth observed that Lauren was slurring her speech and appeared to be far more intoxicated than she had been earlier in the night, and he attempted to convince Lauren to sleep on his and Rossman's couch.  When Lauren asked to return to her apartment, Beth escorted her to Rosenbaum's residence.  Rosenbaum attempted to contact mutual friends to pick up Lauren and take her back to her apartment. Beth then returned to his apartment after these efforts, leaving Lauren at Rosenbaum's apartment. Unsuccessful at contacting someone to come pick Lauren up to take her to her apartment, Rosenbaum acknowledged that shortly thereafter Lauren left his residence on her own. He briefly witnessed her walking in the direction of 11th Street and College Avenue at

approximately 4:30 a.m. A camera located along Lauren's return route to Smallwood Plaza at 10th Street and College Avenue never captured any images of Lauren. After two years of intensive searching, Lauren has never been located and the Spierers presume that she suffered injuries that resulted in her death. The Spierers allege that Lauren's abandonment by the Defendants in an intoxicated and disoriented state in an area known for criminal acts contributed to her disappearance and presumed injuries and death.

## II.   LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of the complaint, not the merits of the suit. *Triad Assocs., Inc. v. Chi. Hous. Auth.*, 892 F.2d 583, 586 (7th Cir. 1989). The standard for assessing the procedural sufficiency of pleadings is imposed by Federal Rule of Civil Procedure 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Thus, although the complaint need not recite "detailed factual allegations," it must state enough facts that, when accepted as true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A claim is facially plausible when the plaintiff pleads facts sufficient for the court to infer that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The *Twombly/Iqbal* standard "is not akin to a 'probability requirement', but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). By comparison, a complaint that merely contains "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy the factual plausibility standard. *Twombly*, 550 U.S. at 555.

A party seeking dismissal under Rule 12(b)(6)'s requirement that the complaint state a claim upon which relief can be granted bears a heavy burden. In making this determination, the

court views the complaint in the light most favorable to the plaintiffs, accepting all well-pleaded factual allegations as true and drawing all reasonable inferences from those allegations in favor of the plaintiffs.  *Lee v. City of Chi.*, 330 F.3d 456, 459 (7th Cir. 2003).  The plaintiff "receives the benefit of imagination" at this stage "[as] long as the hypotheses are consistent with the complaint."  *Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994).  Thus, a complaint should only be dismissed pursuant to Rule 12(b)(6) when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). "To withstand a Rule 12(b)(6) challenge . . . 'the plaintiff must give enough details about the subject-matter of the case to present a story that holds together,' and the question the court should ask is 'could these things have happened, not did they happen.'" *Estate of Davis v. Wells Fargo Bank*, 633 F.3d 529, 533 (7th Cir. 2011) (quoting *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404–05 (7th Cir. 2010)) (emphasis in original).  Additionally, the Court may not rely upon evidence and facts outside of those alleged in the Complaint in ruling on a motion to dismiss.

## III.  DISCUSSION

The Spierers filed a three count complaint against Rossman, Rosenbaum, and Beth. Count I, asserted against all three Defendants, is for negligence resulting in the disappearance, death or injury of an adult child, alleging that Defendants owed a duty of care to Lauren. This count alleges that all three Defendants breached their duty of care by failing to exercise reasonable care to ensure Lauren's safe return to her apartment, and that their actions and omissions contributed to Lauren's disappearance which resulted in her presumed injury and death. Count I further alleges that Rossman's and Rosenbaum's actions of supplying alcohol to Lauren knowing she was already intoxicated also breached a duty of care.  As previously

discussed, the Court has already ruled that Beth did not have a duty to Lauren under the Spierers' common law negligence claim and dismissed Count I against him.  *See* Dkt. 36 at 2. The Court must now determine whether the remaining defendants owed such a duty to Lauren.

Counts II and III are asserted against Rossman and Rosenbaum only and both relate to an alleged statutory duty.  Count II is for negligence *per se*, asserting that Indiana Code § 7.1-5-10-15.5 (the "Indiana Dram Shop Act") imposed a specific duty on Rossman and Rosenbaum, and they breached this duty by violating the Indiana Dram Shop Act. Count III is also based upon the Indiana Dram Shop Act, and alleges that Rossman and Rosenbaum violated this law by furnishing Lauren with alcoholic beverages with the actual knowledge that she was visibly intoxicated at the time the alcoholic beverages were furnished.

The Spierers' Complaint alleges the Defendants' actions caused Lauren's disappearance and/or injury and death. The Spierers' allegations that Defendants' actions were a cause of Lauren's death are necessarily brought under the Indiana Child Wrongful Death Statute, Ind. Code § 34-23-2-1 (the "CWDS").  The CWDS allows parents of a deceased child to recover damages for loss of services, love and companionship, as well as pecuniary losses stemming from the child's death. A decedent is considered a "child" under the CWDS if she is unmarried and is either (a) less than 20 years old, or (b) less than 23 years old and is enrolled in a post-secondary educational institution or a career and technical education program.  I.C. § 34-23-2-1(b).  At common law, someone killed by the tortious conduct of another had no right to recover damages, thus the CWDS is in derogation of the common law and must be strictly construed. *Ind. Patient's Comp. Fund v. Anderson*, 661 N.E.2d 907, 909 (Ind. Ct. App. 1996).   The Spierers' allegation that the Defendants' actions caused Lauren's disappearance relates to their common law loss of services claim, which permits parents to recover for the loss of a child's

services from the time of her alleged injury until the time of her death.  *Forte v. Connerwood Healthcare, Inc.*, 745 N.E.2d 796, 801-2 (Ind. 2001).  Defendants argue that Plaintiffs claims are simply not viable under Indiana law. These arguments are addressed in turn.

**A.      Count I: Common Law Negligence**

Count I of the Spierers' Complaint is a claim for common law negligence.  The Spierers assert that this count should be considered either under the CWDS as a wrongful death action or, alternatively, as a common law loss of services claim.  The primary question the Court must first address is whether Rossman and Rosenbaum owed a duty of care to Lauren under the circumstances alleged, because in the absence of duty a claim of negligence necessarily fails. *See Kroger Co. v. Plonski*, 930 N.E.2d 1, 6 (Ind. 2010) ("Absent a duty there can be no negligence or liability based upon the breach.").  Additionally, the Court must address whether the common law loss of services claim is applicable to Lauren as an adult child.

**1.      Child Wrongful Death Statute Claim**

Wrongful death actions brought under the CWDS are essentially ones for common law negligence.  *See Moore v. Hamilton Se. Sch. Dist.*, No. 1:11-cv-01548-SEB, 2013 WL 4607228, at *8 (S.D. Ind. Aug. 29, 2013) ("The elements of a wrongful death claim are functionally identical to those of common-law negligence . . . except that wrongful child death actions, as statutory claims, are to be construed strictly.").  In order to prevail on a motion to dismiss, the Spierers' Complaint must sufficiently allege facts that show that Rossman and Rosenbaum (1) owed a duty to Lauren; (2) they breached that duty; and (3) Lauren's death was proximately caused by the breach.  *Witmat Dev. Corp. v. Dickison*, 907 N.E.2d 170, 173 (Ind. Ct. App. 2009).

In order to prevail on their negligence claims, the Spierers must first show that Rossman and Rosenbaum each owed a duty to conform his conduct to a standard of care arising from his

relationship to Lauren. *Merchants Nat'l Bank v. Simrell's Sports Bar & Grill, Inc.*, 741 N.E.2d 383, 386 (Ind. Ct. App. 2000). The issue of whether a duty exists is a question of law, and the Court should balance three factors to determine whether there was a duty under common law: the relationship between the parties, the foreseeability of the occurrence, and public policy concerns. *Webb v. Jarvis*, 575 N.E.2d 992, 995 (Ind. 1991); *see also Delta Tau Delta, Beta Alpha Chapter v. Johnson*, 712 N.E.2d 968, 971 (Ind. 1999) ("Determining whether one party owes a duty to another is a question of law for the court."); *Paragon Family Rest. v. Bartolini*, 799 N.E.2d 1048, 1053 (Ind. 2003) ("There is no doubt . . . that reasonable foreseeability is an element of a landowner or business proprietor's duty of reasonable care.").

At oral argument the Spierers asserted five bases upon which they claim the Defendants owed a duty of care to Lauren, four of which arise under common law: affirmative undertaking, special relationship between social companions, the duty not to intentionally or negligently prevent assistance, and the duty to protect invitees from reasonably foreseeable criminal acts. The fifth basis for duty, negligence *per se*, will be addressed separately.

### a.     Defendants did not affirmatively undertake a duty of care to Lauren

The Spierers argue that Restatement (Second) of Torts § 324 applies under Indiana law, and therefore, Rossman and Rosenbaum affirmatively undertook a duty to ensure Lauren's safe return to her apartment. Restatement § 324 states:

> One who, being under no duty to do so, takes charge of another who is helpless adequately to aid or protect himself is subject to liability to the other for any bodily harm caused to him by
>     (a) the failure of the actor to exercise reasonable care to secure the safety of the other while within the actor's charge, or
>     (b) the actor's discontinuing his aid or protection, if by so doing he leaves the other in a worse position than when the actor took charge of him.

Restatement (Second) of Torts § 324 (1965).   The Spierers cite to *Perry v. N. Ind. Pub. Serv. Co.*, 433 N.E.2d 44, 50 (Ind. Ct. App. 1982) in support of their argument that this section of the Restatement has been adopted by Indiana courts and is applicable in this case.   However, the *Perry* court cites to Restatement (Second) of Torts § 324A, not Restatement § 324, and no other cases in Indiana cite to this specific statement of the law upon which the Spierers' arguments rely.

The proper statement of Indiana law provides that "[a] duty of care may arise where one party gratuitously or voluntarily assumes such a duty." *Smith v. Delta Tau Delta*, 988 N.E.2d 325, 336 (Ind. Ct. App. 2013).   Such voluntary assumption results in a special relationship between the parties and a corresponding duty to act as a reasonably prudent person. *Id.* "Although the existence and extent of an assumed duty is generally a question of fact for the jury, it may be resolved as a matter of law if the designated evidence is insufficient to establish such a duty." *Id.* The defendant must have undertaken the duty both "specifically and deliberately," and the party on whose behalf the duty is being undertaken must relinquish control of the obligation. *Id.* (citing *Griffin v. Simpson*, 948 N.E.2d 354, 360 (Ind. Ct. App. 2011)). "The actor must specifically undertake to perform the task he is charged with having performed negligently, for without the actual assumption of the undertaking there can be no correlative legal duty to perform the undertaking carefully." *Id.* (quoting *Am. Legion Pioneer Post No. 340 v. Christon*, 712 N.E.2d 532, 535 (Ind. Ct. App. 1999)).   Therefore, it is not sufficient that there is a perception by the plaintiff that a defendant has undertaken a duty. *See Griffin*, 948 N.E.2d at 360 n.4; *Van Duyn v. Cook–Teague P'ship*, 694 N.E.2d 779, 782 (Ind. Ct. App. 1998) ("A defendant cannot be bound by a duty based upon a custom and practice that exists not in reality but only in the mind of the plaintiff.").   Thus, the question is, as a matter of law, whether the

Spierers have pled sufficient facts that would show that Rossman and Rosenbaum affirmatively and deliberately undertook a duty to ensure Lauren's safe return to her apartment.

The facts alleged in the Complaint do not show that the Defendants took some affirmative action that would have given rise to an assumption of a duty of care, rather, the facts, as alleged in the Complaint and accepted as true, lead to the opposite conclusion.  Indiana courts have held that there is no duty, or even a right, to control an intoxicated person and prevent harm to a third party (in this case, Mr. and Mrs. Spierer), even in situations where the defendant initially tried to prevent the intoxicated person from leaving and/or tried to persuade the person to remain on the premises.  *See Lather v. Berg*, 519 N.E.2d 755, 766 (Ind. Ct. App. 1988) (the act of taking the keys from intoxicated minor and then relinquishing them did not establish defendants had gratuitously assumed a duty to prevent minor from driving, resulting in the death of a police officer); *Hawn v. Padgett*, 598 N.E.2d 630, 634 (Ind. Ct. App. 1992) (defendants held not to have a duty to prevent intoxicated minor from driving after abandoning efforts to prevent him from driving, resulting in injuries to the plaintiff).  Here, the Defendants' actions in initially offering help to Lauren, and then abandoning those efforts, do not lead to the conclusion that they affirmatively assumed a duty of care to her.

The facts as stated in the Complaint also show that Lauren never relinquished control of her obligation to keep herself safe, therefore, the Defendants did not have the ability to assume a duty of care.  The Complaint states that Lauren refused to stay at Rossman's apartment, and insisted that she be allowed to go back to her apartment while at Rosenbaum's residence.  The fact that Lauren was intoxicated does not result in the relinquishment of her own duty to keep herself safe.  Even more on-point, Indiana courts have found that even intoxicated persons have an obligation to "exercise that degree of care for [her] own safety that a reasonable, prudent

10

[person] would have exercised under the same or like circumstances.  [She] is held to use the same degree of care as a sober person."  *Stephenson v. Ledbetter*, 596 N.E.2d 1369, 1372-73 (Ind. 1992) (quoting *Colaw v. Nicholson*, 450 N.E.2d 1023, 1026 (Ind. Ct. App. 1983)).  The mere fact that Rossman and Rosenbaum were present with Lauren while she was intoxicated, and even the fact that Rosenbaum attempted to find Lauren a ride home, does not lead to the conclusion that they affirmatively undertook a duty to help her.

> **b.**    **Defendants did not have duty of care based upon social companionship**

The Spierers also argue that Rossman and Rosenbaum owed a duty of care to Lauren arising out of a special relationship as social companions.  However, they have not cited to any Indiana case law in support of this argument, and Indiana law is to the contrary.  Indiana courts have not specifically addressed the issue of social companionship giving rise to a duty of care; however, they have addressed the issue of whether social hosts—and indirectly, friends—owe a common law duty to intoxicated guests and companions.

In *Lather v. Berg*, the Indiana Court of Appeals held that an intoxicated minor's friends and hosts did not incur liability by relinquishing the minor's keys and ordering him off the premises, even though the friends knew he was intoxicated and would drive.  519 N.E.2d at 767. In *Lather*, the administratrix of the estate of a deceased police officer killed in an automobile accident with the intoxicated minor, Keith Murphy, brought suit against Joseph Berg and Ronald Bailey, alleging that they supplied Murphy with alcohol and marijuana, then permitted him to leave and drive his vehicle while intoxicated.  Murphy, Berg, Bailey, and Murphy's girlfriend, Christina Weitzel, had been drinking together at Berg's home.  After an altercation between Murphy and Weitzel regarding Murphy's fitness to drive home, Weitzel, Berg and Bailey took Murphy's keys and Bailey placed them in his pocket.  Berg offered to take Murphy home, but

11

Murphy refused.  Murphy continued to argue with his companions until finally Berg told him to leave.  Bailey, also fed up with Murphy, threw the keys at him and told Murphy he could leave if he wished to do so.  Unfortunately, Murphy picked up the keys and drove away, subsequently getting into a fatal accident with the police officer.  The Indiana Court of Appeals concluded that "[t]he relationship of social host-guest has not been recognized in Indiana to be sufficient, without more, to impose [the duty to control the conduct of a third person] on a social host."  *Id.* The court explained that in circumstances where liability has been found where a social host permits an intoxicated person to leave the premises, "our courts have done so in order to give effect to the legislative will as enacted in various statutes."  *Id.*

The *Lather* case is instructive here.  Although Lauren did not operate an automobile, her social companions/hosts did permit her to leave and walk home, which presumably led to the damages alleged in this case.  Indeed, the situation is comparable to that in *Lather*, where social companions allowed their intoxicated friend to leave the premises after giving up attempts to prevent him from leaving.  The uncontested facts in *Lather* led to the conclusion that social hosts, without more, do not have a duty to intoxicated persons or injured third parties.  Likewise, the facts in the Complaint, assumed to be true, state that, at most, Lauren was a social guest of Rossman and Rosenbaum.  The Indiana Supreme Court has stated unequivocally that "common law liquor liability shall not be extended to the purely social host, except in cases involving a breach of a *statutory duty*."  *Culver v. McRoberts*, 192 F.3d 1095, 1100 (7th Cir. 1999) (citing *Gariup Const. Co., Inc. v. Foster*, 519 N.E.2d 1224, 1228 (Ind. 1988)) (emphasis added).  It is the "intention of the Indiana Supreme Court to limit negligence liability for the purely social host, stemming from the provision of alcohol, to negligence *per se* under Indiana statutes."  *Id.* at

1101.  Based upon the facts as pled in the Complaint, the Court concludes that Rossman and Rosenbaum did not owe a common law duty to Lauren as social companions.

### c.   Duty not to intentionally or negligently prevent assistance does not apply

The Spierers also argue that Rossman owed Lauren a duty of care based upon the duty to not intentionally or negligently prevent assistance.  Specifically, the Spierers allege that after Lauren and Rossman left Kilroy's, they went to Lauren's apartment building.  They assert that Rossman got into a physical altercation with individuals he encountered in the hallway who confronted him for not assisting Lauren to her apartment.  The Spierers cite to Restatement (Second) of Torts §§ 326 and 327 in support of their argument.  Restatement (Second) of Torts § 326 states, "[o]ne who intentionally prevents a third person from giving to another aid necessary to prevent physical harm to him, is subject to liability for physical harm caused to the other by the absence of the aid which he has prevented the third person from giving."  Restatement § 327 states:

> One who knows or has reason to know that a third person is giving or is ready to give to another aid necessary to prevent physical harm to him, and negligently prevents or disables the third person from giving such aid, is subject to liability for physical harm caused to the other by the absence of the aid which he has prevented the third person from giving.

Restatement (Second) of Torts § 327 (1965).

However, Indiana courts have not adopted Restatement §§ 326 and 327, and the Spierers cite to no Indiana case law in support of their argument.  Additionally, the Complaint does not allege that the individuals in the hallway attempted to assist Lauren themselves, only that Rossman was confronted for not taking Lauren to her apartment.  Therefore, the Court finds that Rossman did not owe a duty of care to Lauren based upon intentionally or negligently preventing assistance.

13

### d.      No duty to protect Lauren from reasonably foreseeable criminal acts

Next, the Spierers argue that Rossman and Rosenbaum owed a duty to protect Lauren, as an invitee, from reasonably foreseeable criminal acts.  "A landowner owes the highest duty of care to an invitee; that is the duty to exercise reasonable care for his protection *while he is on the landowner's property*."  *Harris v. Traini*, 759 N.E.2d 215, 222 (Ind. Ct. App. 2001) (emphasis added).  Under Indiana law, "the standard of care given the public invitee, the business invitee (visitor), and the social invitee (guest) is the same." *Kinsey v. Bray*, 596 N.E.2d 938, 941 (Ind. Ct. App. 1992).  "[T]he law will recognize a duty on the part of a possessor of land to protect social invitees against unreasonable risk of physical harm from third persons." *Id.*

Importantly, the Spierers do not assert that Lauren suffered injuries while on the Defendants' premises; rather, they assert that the Defendants owed Lauren a duty of care that extended beyond the apartment building's premises. While a duty of reasonable care may be extended beyond the possessor's premises, this duty of reasonable care is only extended "when it is reasonable for invitees to believe the invitor controls premises adjacent to his own or where the invitor knows his invitees customarily use such adjacent premises in connection with the invitation." *Ember v. B.F.D., Inc.*, 490 N.E.2d 764, 772 (Ind. Ct. App. 1986).

Although reasonable foreseeability is ordinarily a question of fact for the jury to decide, in the context of duty foreseeability it is a question of law to be determined by the court.  *Kroger Co.*, 930 N.E.2d at 7.  In this context, the court considers the "totality of the circumstances" and must examine "all of the circumstances surrounding an event, including the nature, condition, and location of the land, as well as prior similar incidents to determine whether a criminal act was foreseeable." *Id.* (citing *Delta Tau Delta, Beta Alpha Chapter*, 712 N.E.2d at 972–73).  The inquiry is focused on whether a discreet element of the duty has been satisfied.  *Id.*

Although this argument has some appeal, the Court declines to extend the rule set forth in *Ember* to the facts alleged in the Complaint, specifically that the duty to protect against foreseeable criminal acts extended beyond Rossman's and Rosenbaum's respective apartments. "A landowner or business enterprise does not normally affect risks outside its boundaries; consequently, it is not normally responsible for injuries suffered on abutting property." *Lutheran Hosp. of Ind., Inc. v. Blaser*, 634 N.E.2d 864, 870 (Ind. Ct. App. 1994). Indiana courts have applied the exception to this rule in cases involving injuries occurring in parking lots adjacent to invitors' businesses, recognizing that in some cases an invitor's business activities extend beyond its legal boundaries. *Ember*, 490 N.E.2d at 772; *Harris*, 759 N.E.2d at 225 n.12. *Ember* involved a situation where a tavern had affirmatively assumed a duty to patrol the areas adjacent to the business and protect patrons, 490 N.E.2d at 771, and the Court has already determined that the Defendants in this case did not affirmatively assume a duty to Lauren. Another consideration in the *Ember* case was the fact that use of the adjoining property where the injury occurred was to the business's commercial advantage, and involved a hazard which resulted from activities carried on in the course of the defendant's commercial enterprise. 490 N.E.2d at 773. Unlike in the commercial context where a business owner benefits from visitors' use of adjacent properties, there is nothing in the stated facts that would warrant extending the duty of reasonable care to somewhere beyond Rossman's and Rosenbaum's apartments into the streets of Bloomington, Indiana. Nor do the Spierers cite to any case law where the principle has been extended to impose liability on a non-commercial possessor of property located in an area where criminal acts are known to occur for injuries sustained by a social invitee once the invitee left the premises. To do so would potentially expose any social host living in an area in which criminal acts—unrelated to the landowner's or possessor's activities—have occurred to possible liability

if guests are injured by the criminal act of a third party after leaving their property.  *See Delta Tau Delta, Beta Alpha Chapter*, 712 N.E.2d at 973 ("[T]he totality of the circumstances test does not impose on landowners the duty to ensure an invitee's safety, but requires landowners to take *reasonable* precautions to prevent *foreseeable* criminal acts against invitees." (emphasis in original)).

In addition, the Spierers have admitted in their Complaint and in oral argument, that they do not know what, if any, criminal act may have been perpetrated against Lauren. So, it is impossible for the Court to determine whether this unknown act was similar to the alleged criminal acts in the area such that it was foreseeable, thus satisfying one of the elements of finding that a duty of care existed.  Therefore, the Court finds that the Spierers' Complaint does not allege facts from which the Court can conclude, as a matter of law, that Rossman or Rosenbaum had a duty to protect Lauren from reasonably foreseeable criminal acts.

Because the facts as alleged in the Complaint show that Rossman and Rosenbaum did not owe a duty of care to Lauren under common law, the motion to dismiss on the wrongful death claim asserted under the CWDS in Count I is **GRANTED**.

### 2.    Common Law Loss of Services Claim

The Spierers also assert that they can also recover for Lauren's disappearance under a common law loss of services theory.  This cause of action is a property right that allows a parent to recover for the loss of a child's services during the time of her absence, as opposed to being one for personal injury.  *Forte*, 745 N.E.2d at 801-2 ("a father's loss of services of his child was in the nature of a property right with recoverable damages limited to pecuniary losses for injury to the father's property."); *see also State v. Eaton*, 659 N.E.2d 232, 237 (Ind. Ct. App. 1995) (noting that when a minor is injured by a wrongful act, the child has a personal injury claim and

the parent has a claim for loss of services).  Unlike a wrongful death claim, however, damages under a loss of service claim are measured from the time of injury to the time of death.  *Forte*, 745 N.E.2d at 802.  In contrast, the CWDS allows a parent to recover for the loss of services of a child, in addition to damages that the parent incurs after and as a result of the child's death, including loss of love and companionship, health care, hospitalization, and burial expenses, and expenses for psychological counseling incurred by a surviving parent or minor sibling that is required because of the death of the child.  *Id.*; I.C. § 34-23-2-1(e).  Punitive damages are not allowed under either a claim for loss of a child's services or the CWDS.  *Id.* at 803.

While the CWDS permits a parent to recover damages for a child up to the age of 23 who is enrolled in an institute of higher education, the case law refers to recovery for the loss of the value of services of a "minor child."  *Buffalo v. Buffalo*, 441 N.E.2d 711, 714 (Ind. Ct. App. 1982) ("A wrongful act resulting in an injury to a minor child gives rise to two causes of action, one in favor of the injured child for personal injuries inflicted and the other in favor of the parent for loss of services.").  Under Indiana law, a "minor" is defined as a person less than eighteen years of age, and an "adult" is a person at least eighteen years of age.  Ind. Code §§ 1-1-4-5(1) & (8); *Bainter v. Bainter*, 590 N.E.2d 1134, 1136 (Ind. Ct. App. 1992). The Spierers' Complaint specifically alleges that Lauren was an "adult child" at the time of her disappearance and presumed death.  Dkt. 1-1 at 8.  Clearly, it would not be appropriate to apply the definition of a "child" found in the CWDS to a common law loss of services claim, as the Supreme Court of Indiana has stated "[i]n reviewing [the Child Wrongful Death Statute], we presume that the legislature did not intend to make any changes in the common law beyond those declared either in express terms or by unmistakable implication."  *Forte*, 745 N.E.2d at 800 (quoting *South Bend Cmty. Schs. v. Widawski*, 622 N.E.2d 160, 162 (Ind. 1993)).  The Spierers' loss of services claim

is barred as a matter of law because their Complaint alleges that Lauren was an adult at the time of her disappearance and presumed death; thus, the motion to dismiss on Count I of the Spierers' Complaint for loss of a child's services is **GRANTED**.

**B.      Counts II and III: Negligence *Per Se* and Dram Shop Liability**

Counts II and III of the Spierers' Complaint are both based upon allegations that Rossman and Rosenbaum violated the Indiana Dram Shop Act. "The unexcused violation of a statutory duty constitutes negligence *per se* 'if the statute or ordinance is intended to protect the class of persons in which the plaintiff is included and to protect against the risk of the type of harm which has occurred as a result of its violation.'" *Erwin v. Roe*, 928 N.E.2d 609, 616 (Ind. Ct. App. 2010) (quoting *Kho v. Pennington*, 875 N.E.2d 208, 212 (Ind. 2007)). The Spierers have asserted that Defendants had a statutory duty under a negligence *per se* theory, and that they are liable under the Indiana Dram Shop Act.

The Indiana Dram Shop Act imposes liability on a person who provides alcoholic beverages to someone who that person knows is intoxicated for tort damages caused later by the intoxication. I.C. § 7.1-5-10-15.5. Under the Indiana Dram Shop Act, the requirements for liability include (1) the person furnishing the alcoholic beverage had actual knowledge that the person to whom the alcoholic beverage was furnished was visibly intoxicated at the time, and (2) the intoxication of the person to whom the alcoholic beverage was furnished was the proximate cause of the death, injury, or damage alleged in the complaint. I.C. § 7.1-5-10-15.5(b). Whether an alcohol provider had the requisite actual knowledge of intoxication is judged by a subjective standard, and is a determination made by the trier of fact. *Jackson v. Gore*, 634 N.E.2d 503, 506 (Ind. Ct. App. 1994). Proximate cause is also an issue for the finder of fact. *Booker, Inc. v. Morrill*, 639 N.E.2d 358, 363 (Ind. Ct. App. 1994).

18

Dram Shop Act liability is not just limited to businesses that serve alcohol, and may be applied to social hosts and guests as well. *See Baxter v. Galligher*, 604 N.E.2d 1245, 1248 (Ind. Ct. App. 1992) ("[O]ur legislature has set forth a specific standard of liability applicable when a person (including a social guest) is furnished alcoholic beverages."); *Culver*, 192 F.3d at 1100 (negligence *per se* action maintained against social host; however, summary judgment was granted to social host on the ground that they did not know the guest was visibly intoxicated). Indeed, Indiana courts have held that "one who buys a drink for an intoxicated friend the donor knows to be intoxicated may be found to have engaged in the conduct proscribed by I.C. 7.1–5–10–15." *Rauck v. Hawn*, 564 N.E.2d 334, 337 (Ind. Ct. App. 1990) (citing *Ashlock v. Norris*, 475 N.E.2d 1167, 1169 (Ind. Ct. App. 1985)). "In each case where it has been held that a defendant furnished alcohol to another for his or her use in violation of the statutes, the supplier was 'the active means' by and through which the liquor was placed in the custody and control of the intoxicated person." *Id.*

The Spierers have adequately stated facts in their Complaint to state a claim against Rossman and Rosenbaum for negligence *per se*, and based on the facts asserted in the Spierers' Complaint, Rossman and Rosenbaum owed a duty to Lauren based upon their alleged violations of the Indiana Dram Shop Act. Lauren was in the class of persons the Dram Shop Act was designed to protect, and the harm that is alleged to have occurred is of the sort that would result from a violation, thus satisfying the requirements for finding a statutory duty under the principle of negligence *per se*. Because the facts as stated by the Spierers are taken as true for purposes of a motion to dismiss, the Court must accept that Rosenbaum provided alcoholic beverages to Lauren at his apartment, and that he knew Lauren was intoxicated at the time he furnished the alcoholic beverages. With regard to Rossman, the Spierers have adequately alleged that he

19

furnished alcohol to Lauren while at Kilroy's and that he had knowledge that she was visibly intoxicated. Moreover, Rossman even conceded at oral argument that a duty to Lauren arose under Dram Shop Act allegations. Drawing all reasonable inferences in favor of the plaintiff, the Court finds that the Spierers have adequately asserted that damage resulted from the alleged violation of the Indiana Dram Shop Act, namely that Lauren was injured and/or killed and that the Spierers themselves suffered harm. Although the Court can determine as a matter of law whether the Spierers have alleged sufficient facts that would give rise to a statutory duty on the part of the Defendants, whether that statute has been violated is a question for the trier of fact. *Nat'l R.R. Passenger Corp. v. Everton by Everton*, 655 N.E.2d 360, 365 (Ind. Ct. App. 1995). The Court concludes that allegations that the Defendants violated the Indiana Dram Shop Act serves as the basis of a duty of care that Rossman and Rosenbaum owed to Lauren for purposes of the Spierers' negligence *per se* claim under Count II and Dram Shop liability under Count III of their Complaint. Therefore, Defendants' motions to dismiss on Counts II and III of the Spierers' Complaint are **DENIED**.

**C.     Proximate Cause and Presumption of Death**

Finally, the main defense argued by the Defendants as to all three counts in the Complaint is that the Spierers have not stated a claim for relief because they have not sufficiently pled proximate cause, specifically that there is no proof that Lauren sustained injuries or that she is deceased, thus barring any negligence claims based on common law negligence, negligence *per se*, and statutory liability under the Indiana Dram Shop Act. Indeed, negligence *per se* does not necessarily mean that there is liability *per se.* The violation of statutory duty is not actionable negligence unless it is also the proximate cause of the injury. *Erwin*, 928 N.E.2d at 616.

20

Because the Court has already determined that the common law negligence claim brought under Count I fails due to a lack of duty on the part of the Defendants, this argument applies only to the negligence *per se* and Dram Shop claims against Rossman and Rosenbaum. Rossman and Rosenbaum argue that the failure to prove that Lauren was injured or is deceased does not satisfy the second requirement for a finding of liability under the Indiana Dram Shop Act, which is that "the intoxication of the person to whom the alcoholic beverage was furnished was a proximate cause of the *death, injury, or damage* alleged in the complaint." I.C. § 7.1-5-10-15.5(b)(2) (emphasis added). Rossman and Rosenbaum assert that the Spierers' Complaint fails to allege an injury proximately caused by their actions, arguing that there is a legal presumption that Lauren is still alive.

Under Indiana law, a presumption of death arises if the following conditions are satisfied: (1) the person has been inexplicably absent for a continuous period of seven years; (2) the person has not communicated with those persons who would be most likely to hear from her; and (3) the person cannot be found despite diligent inquiry and search. *Malone v. Reliastar Life Ins. Co.*, 558 F.3d 683, 688 (7th Cir. 2009) (citing *Roberts v. Wabash Life Ins. Co.*, 410 N.E.2d 1377, 1382 (Ind. Ct. App. 1980)). Defendants take this principle a step further and argue that a person who has been missing for less than seven years is presumed to be alive. *See Malone v. Reliastar Life Ins. Co.*, No. 3:05-CV-660 WCL, 2008 WL 2038389 at *9 (N.D. Ind. May 12, 2008) *aff'd in part,* 558 F.3d 683 (7th Cir. 2009) (citing *Prudential Ins. Co., of Am. v. Moore*, 149 N.E. 718, 721 (Ind. 1925) ("[a]t common law a person was presumed to be living for seven years after his disappearance, and a presumption of death arose only from an unexplained absence for that length of time.")). Thus, there is some case authority to support a "presumption of life" theory in Indiana, although there has been no modern (*i.e.* post-1920s) discussion of the principle aside

21

from the quote by the district court in *Malone* on a motion for reconsideration.   2008 WL 2038389 at *9.

However, under Indiana law, the seven-year presumption of death is not the only way of proving that a person is deceased.  For example, in the context of proving death for purposes of claiming life insurance benefits, "a claimant seeking to prove an insured's death may pursue two separate avenues of proof.  Under the first, a claimant may use direct *or circumstantial evidence* to prove by a preponderance of the evidence that the insured is, in fact, dead.  Under the second, a claimant may seek to prove death by means of a common law presumption."  *Malone*, 558 F.3d at 688 (emphasis added).  This presumption of death is a rebuttable presumption, and "[i]t is for the jury to conclude whether the presumption has been sufficiently rebutted."  *Id.*  Although not explicitly stated in the case law, it should follow that the "presumption of life" is also rebuttable,[1] and a plaintiff should be permitted to use direct or circumstantial evidence to prove that a person is no longer living.  Importantly, these presumptions only raise questions of fact for the jury; a jury can determine whether or not to apply the presumption based upon the facts of the case.  *Id.*

At the motion to dismiss stage, the Court must accept the Spierers' factual assertion that Lauren is deceased, and that Defendants' actions proximately caused her death. It is not necessary at this stage to prove these factual assertions; the Court is only looking at the sufficiency of the Complaint. Because proof of death is a factual question, it would be inappropriate for the Court to apply this presumption and make a finding as a matter of law that Lauren is presumed to be alive. The Spierers should be afforded the opportunity to present

---

[1] Indiana Rule of Evidence 301 provides that in civil cases, "the party against whom a presumption is directed has the burden of producing evidence to rebut the presumption."  In this case, the presumption that Lauren is alive is directed against the Spierers.  The Indiana Rules of Evidence provide that a presumption gives rise to a burden of production of evidence to rebut the presumption; however, the production of evidence is not warranted at the motion to dismiss stage.

circumstantial evidence in order to prove that Lauren is deceased, as the case law clearly states that the presumption of death is not the only way by which a person can prove death.  Just as a party is allowed to present evidence to rebut a presumption of death, a party should also be allowed to present evidence to rebut a presumption that a person is still living.  Therefore, the Court finds that the presumption of death under Indiana law is not dispositive of the Spierers' claim under Counts II and III, and the Defendants' motions to dismiss on this basis is **DENIED**.

### IV.   <u>CONCLUSION</u>

A motion to dismiss pursuant to Rule 12(b)(6) does not test whether the plaintiff will prevail on the merits but instead whether the claimant has properly stated a claim.  *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). For the foregoing reasons, the Court finds the Spierers' claims of negligence *per se* and Dram Shop liability have survived the initial hurdle of a motion to dismiss. Whether or not these claims can survive summary judgment is a matter for another day. Accordingly, the Court **GRANTS** Rossman's and Rosenbaum's motions to dismiss Count I of the Spierers' Complaint for common law negligence brought under the Child Wrongful Death Statute and for common law loss of a child's service. The Court **DENIES** Rossman's and Rosenbaum's motions to dismiss on Counts II and III of the Spierers' Complaint for negligence *per se* and Dram Shop liability.

**SO ORDERED.**

Date:   12/23/2013
_____

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Carl Arthur Salzmann
602 North College Avenue
Bloomington, Indiana  47404

Jason Ross Barclay
BARNES & THORNBURG LLP
jason.barclay@btlaw.com

Jeanine R. Kerridge
BARNES & THORNBURG LLP
jeanine.kerridge@btlaw.com

Larry A. Mackey
BARNES & THORNBURG LLP
larry.mackey@btlaw.com

James Gregory Garrison
GARRISON LAW FIRM
greg@garrisonlegal.com

Joshua N. Taylor
GARRISON LAW FIRM LLC
josh@garrisonlegal.com

John Carl Trimble
LEWIS WAGNER LLP
jtrimble@lewiswagner.com

Stephanie Lynn Cassman
LEWIS WAGNER LLP
scassman@lewiswagner.com

Theresa Renee Parish
LEWIS WAGNER LLP
tparish@lewiswagner.com

Robert M. Baker, IV
LEWIS WAGNER LLP
rbaker@lewiswagner.com

Dane Andrew Mize
SKILES DETRUDE
dmize@skilesdetrude.com

Richard Robert Skiles
SKILES DETRUDE
rskiles@skilesdetrude.com